**LEE LITIGATION GROUP, PLLC**
C.K. Lee, Esq. (CL 4086)
Anne Seelig, Esq. (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| AKLEEMA KHAN, *on behalf of herself,*<br>*FLSA Collective Plaintiffs, and the Class*, | Case No.: |
| Plaintiff, | **COLLECTIVE AND CLASS**<br>**ACTION COMPLAINT** |
| -against- | **Jury Trial Demanded** |
| PORT WASHINGTON HOSPITALITY LLC<br>       d/b/a NINO'S BEACH,<br>NINO AQ LLC<br>       d/b/a NINO'S AQ,<br>46TH STREET HOSPITALITY, INC.<br>       d/b/a NINO'S 46,<br>FILLAS RESTAURANT GROUP, LLC,<br>VENDOME HOSPITALITY GROUP, LLC,<br>EVP HOSPITALITY, INC.,<br>FRANCO VENDOME,<br>MICHAEL VENDOME,<br>GENNARO VENDOME,<br>CHRISTOPHER FILLAS,<br>ELIAS FILLAS,<br>STACEY FILLAS, and<br>EFTHIMIOS PAPANASTASOPOULOS<br>       a/k/a TIM PAPPAS, | |
| Defendants. | |

---

Plaintiff AKLEEMA KHAN ("Plaintiff"), on behalf of herself and others similarly situated, by and through her undersigned attorneys, hereby files this Collective and Class Action Complaint against Defendants, PORT WASHINGTON HOSPITALITY LLC d/b/a NINO'S

BEACH, NINO AQ LLC d/b/a NINO'S AQ, 46TH STREET HOSPITALITY, INC. d/b/a NINO'S 46, FILLAS RESTAURANT GROUP, LLC, VENDOME HOSPITALITY GROUP, LLC, EVP HOSPITALITY, INC., ("Corporate Defendants"), FRANCO VENDOME, MICHAEL VENDOME, GENNARO VENDOME, CHRISTOPHER FILLAS, ELIAS FILLAS, STACEY FILLAS, and EFTHIMIOS PAPANASTASOPOULOS a/k/a TIM PAPPAS ("Individual Defendants," and together with Corporate Defendants, "Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiff alleges that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to an invalid tip credit, (2) illegally retained tips, (3) misappropriated tips due to an invalid tip pool, (4) improper meal credit deductions, (5) liquidated damages, and (6) attorneys' fees and costs.

2.      Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), she and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to an invalid tip credit, (2) illegally retained tips, (3) misappropriated tips due to an invalid tip pool, (4) improper meal credit deductions, (5) unpaid spread of hours premiums, (6) statutory penalties, (7) liquidated damages, and (8) attorneys' fees and costs.

3.      Plaintiff brings individual claims, pursuant to the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), due to Defendants' unlawful discrimination against her on the basis of her sex and religion, that she is entitled to recover from Defendants: (1) economic damages, (2) compensatory damages, (3) punitive damages and (4) attorneys' fees and costs.

4.      Plaintiff brings additional individual claims, pursuant to the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"), due to Defendants' unlawful

discrimination against her on the basis of her sex and religion, that she is entitled to recover from Defendants: (1) economic damages (2) compensatory damages, (3) punitive damages and (4) attorneys' fees and costs.

5.    Plaintiff brings additional individual claims, pursuant to the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq*., due to Defendants' unlawful retaliation against her for asserting her rights under the foregoing statutes, that she is entitled to recover from Defendants: (1) economic damages (2) compensatory damages, (3) punitive damages and (4) attorneys' fees and costs.

6.    Plaintiff brings additional individual claims, pursuant to the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, due to Defendants' unlawful retaliation against her for asserting her rights under the foregoing statutes, that she is entitled to recover from Defendants: (1) economic damages (2) compensatory damages, (3) punitive damages and (4) attorneys' fees and costs.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337, and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8.    Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391.

## PARTIES

9.    Plaintiff AKLEEMA KHAN is a resident of Queens County, New York.

10.    Individual Defendants FRANCO VENDOME, MICHAEL VENDOME, and GENNARO VENDOME are all brothers, and, together, they control and operate Corporate Defendants VENDOME HOSPITALITY GROUP, LLC (collectively, the "Vendome

Defendants"), NINO'S AQ LLC d/b/a NINO'S AQ, and 46TH STREET HOSPITALITY, INC. d/b/a NINO'S 46.

11.    Individual Defendants CHRISTOPHER FILLAS, ELIAS FILLAS, and STACEY FILLAS are siblings, and, together, they control and operate Corporate Defendant FILLAS RESTAURANT GROUP, LLC (collectively, the "Fillas Defendants").

12.    Vendome Defendants and Fillas Defendants, together, control and operate Corporate Defendant PORT WASHINGTON HOSPITALITY LLC d/b/a NINO'S BEACH.

13.    Individual Defendant EFTHIMIOS PAPANASTASOPOULOS a/k/a TIM PAPPAS controls and operates Corporate Defendant EVP HOSPITALITY, INC. (together, the "EVP Defendants"), through which he provides restaurant operations management and consultation services to restaurants and hospitality groups.

14.    Defendants own and operate three (3) restaurants in New York, at the following locations:

   a)  Nino's Beach – 43 Orchard Beach Blvd, Port Washington, NY 11050;

   b)  Nino's AQ – 35-01 Ditmars Blvd, Queens, NY 11105; and

   c)  Nino's 46 – 39 W 46th St New York, NY 10036;

   (collectively, the "Restaurants").

15.    The Restaurants are operated as a single integrated enterprise under the common control of the Vendome Defendants, with Fillas Defendants and EVP Defendants as operational partners in Vendome Defendants' flagship "Nino's Beach" Restaurant. Specifically, all the Restaurants are engaged in related activities, share common ownership, and have a common business purpose:

   a)  Vendome Defendants (with the exception of Vendome Defendant GENNARO VENDOME) and Fillas Defendants (with the exception of Fillas Defendant

STACEY FILLAS) are all principals on the liquor license for Defendants' Nino's Beach. *See* **Exhibit A**.

b)  Vendome Defendants and Fillas Defendants (with the exception of Fillas Defendant STACEY FILLAS) signed an agreement to jointly control and operate Corporate Defendant PORT WASHINGTON HOSPITALITY, LLC and their Nino's Beach Restaurant. *See* **Exhibit B**, the agreement between Vendome Defendants and Fillas Defendants for such joint ownership. Specifically, Fillas Defendants collectively own 60% and Vendome Defendants collectively own 40% of Corporate Defendant PORT WASHINGTON HOSPITALITY, LLC. *Id.*

c)  In or around October 2022, Vendome Defendants and Fillas Defendants, together through Corporate Defendant PORT WASHINGTON HOSPITALITY, LLC, retained EVP Defendants' consultation services to assist in operating and managing Defendants' Nino's Beach. *See* **Exhibit C**, the agreement between Corporate Defendant PORT WASHINGTON HOSPITALITY, LLC and EVP Defendants for such services.

d)  Vendome Defendants FRANCO VENDOME, MICHAEL VENDOME, and GENNARO VENDOME are all principals on the liquor license for Vendome Defendants' Nino's AQ. *See* **Exhibit D**.

e)  Employees, merchandise, and supplies are interchangeable among all of the Restaurants. Throughout Plaintiff's employment, Vendome Defendants regularly interchanged employees, including Plaintiff, between their Restaurants to perform work, on an as-needed basis.

16.  Defendants operate their Restaurants through the following Corporate Defendants:

a) Corporate Defendant PORT WASHINGTON HOSPITALITY, LLC d/b/a NINO'S BEACH is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business located at 43 Orchard Beach Blvd, Port Washington, NY 11050 and an address for service of process located at 31-19 Newtown Avenue, Astoria, NY 11102. Defendants control and operate Nino's Beach through Corporate Defendant PORT WASHINGTON HOSPITALITY, LLC.

b) Corporate Defendant NINO AQ LLC d/b/a NINO'S AQ is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business and an address for service of process both located at 35-01 Ditmars Boulevard, Astoria, NY 11105. Vendome Defendants control and operate Nino's AQ through Corporate Defendant NINO AQ LLC.

c) Corporate Defendant 46TH STREET HOSPITALITY , INC. d/b/a NINO'S 46 is a domestic business corporation organized under the laws of the State of New York, with a principal place of business and an address for service of process both located at 39 W 46th Street, New York, NY 10036. Vendome Defendants control and operate Nino's 46 through Corporate Defendant 46TH STREET HOSPITALITY , INC.

d) Corporate Defendant VENDOME HOSPITALITY GROUP LLC is a domestic limited liability company organized under the laws of the State of New York, with an address for service of process located at 35-01 Ditmars Boulevard, Astoria, NY 11105, the same principal place of business and address for service of process as Corporate Defendant NINO AQ LLC.

e)  Corporate Defendant FILLAS RESTAURANT GROUP LLC is a domestic limited liability company organized under the laws of the State of New York, with an address for service of process located at 35-01 Ditmars Boulevard, Astoria, NY 11105, the same address for service of process as Corporate Defendant PORT WASHINGTON HOSPITALITY, LLC.

f)  Corporate Defendant EVP HOSPITALITY, INC. is a foreign business corporation organized under the laws of the State of Florida, with an address for service of process located at 601 NE 39th Street 316 Miami, FL 33137.

17.    Individual Defendant FRANCO VENDOME is a co-owner and co-founder of Corporate Defendants PORT WASHINGTON HOSPITALITY, LLC, NINO AQ LLC, 46TH STREET HOSPITALITY, INC., and VENDOME HOSPITALITY GROUP, LLC. Individual Defendant FRANCO VENDOME exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant FRANCO VENDOME had and exercised the power and authority to (and also delegates to managers and supervisors the power to) fire and hire, determine rate and method of pay, determine work schedules, and otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant FRANCO VENDOME exercised functional control over the business and financial operations of the above Corporate Defendants. Individual Defendant FRANCO VENDOME ensured that the business is operating efficiently and profitably.

18.    Individual Defendant MICHAEL VENDOME is a co-owner and co-founder of Corporate Defendants PORT WASHINGTON HOSPITALITY, LLC, NINO AQ LLC, 46TH STREET HOSPITALITY, INC., and VENDOME HOSPITALITY GROUP, LLC. Individual Defendant MICHAEL VENDOME exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant MICHAEL

VENDOME had and exercised the power and authority to (and also delegates to managers and supervisors the power to) fire and hire, determine rate and method of pay, determine work schedules, and otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant MICHAEL VENDOME exercised functional control over the business and financial operations of the above Corporate Defendants. Individual Defendant MICHAEL VENDOME ensured that the business is operating efficiently and profitably.

19.     Individual Defendant GENNARO VENDOME is a co-owner and co-founder of Corporate Defendants PORT WASHINGTON HOSPITALITY, LLC, NINO AQ LLC, 46TH STREET HOSPITALITY, INC., and VENDOME HOSPITALITY GROUP, LLC. Individual Defendant GENNARO VENDOME exercised control over the employment terms and conditions of Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant GENNARO VENDOME had and exercised the power and authority to (and also delegates to managers and supervisors the power to) fire and hire, determine rate and method of pay, determine work schedules, and otherwise affect the quality of employment of Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant GENNARO VENDOME exercised functional control over the business and financial operations of the above Corporate Defendants. Individual Defendant GENNARO VENDOME ensured that the business is operating efficiently and profitably.

20.     Individual Defendant CHRISTOPHER FILLAS is a co-owner and co-founder of Corporate Defendants PORT WASHINGTON HOSPITALITY, LLC and FILLAS RESTAURANT GROUP, LLC. Individual Defendant CHRISTOPHER FILLAS exercised control over the employment terms and conditions of employees of Nino's Beach, including Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant CHRISTOPHER FILLAS

had and exercised the power and authority to (and also delegates to managers and supervisors the power to) fire and hire, determine rate and method of pay, determine work schedules, and otherwise affect the quality of employment of employees of Nino's Beach, including Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant CHRISTOPHER FILLAS exercised functional control over the business and financial operations of the above Corporate Defendants. Individual Defendant CHRISTOPHER FILLAS ensured that the business is operating efficiently and profitably.

21.    Individual Defendant ELIAS FILLAS is a co-owner and co-founder of Corporate Defendants PORT WASHINGTON HOSPITALITY, LLC and FILLAS RESTAURANT GROUP, LLC. Individual Defendant CHRISTOPHER FILLAS exercised control over the employment terms and conditions of employees of Nino's Beach, including Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant ELIAS FILLAS had and exercised the power and authority to (and also delegates to managers and supervisors the power to) fire and hire, determine rate and method of pay, determine work schedules, and otherwise affect the quality of employment of employees of Nino's Beach, including Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant ELIAS FILLAS exercised functional control over the business and financial operations of the above Corporate Defendants. Individual Defendant ELIAS FILLAS ensured that the business is operating efficiently and profitably.

22.    Individual Defendant STACEY FILLAS is a manager of Corporate Defendants PORT WASHINGTON HOSPITALITY, LLC and FILLAS RESTAURANT GROUP, LLC. Individual Defendant STACEY FILLAS exercised control over the employment terms and conditions of employees of Nino's Beach, including Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant STACEY FILLAS had and exercised the power and authority to (and also delegates to managers and supervisors the power to) fire and hire, determine

rate and method of pay, determine work schedules, and otherwise affect the quality of employment of employees of Nino's Beach, including Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant STACEY FILLAS exercised functional control over the business and financial operations of the above Corporate Defendants. Individual Defendant STACEY FILLAS ensured that the business is operating efficiently and profitably. Individual Defendant STACEY FILLAS, as a manager of Defendants' Nino's Beach, improperly included herself in Defendants' tip pool, thereby retaining tips from Plaintiff, FLSA Collective Plaintiffs, and Class Members.

23.    Individual Defendant EFTHIMIOS PAPANASTASOPOULOS a/k/a TIM PAPPAS is the owner of Corporate Defendant EVP HOSPITALITY, INC, and provided operational management services for Defendants' Nino's Beach Restaurant. Individual Defendant EFTHIMIOS PAPANASTASOPOULOS a/k/a TIM PAPPAS exercised control over the employment terms and conditions of employees of Nino's Beach, including Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant EFTHIMIOS PAPANASTASOPOULOS a/k/a TIM PAPPAS had and exercised the power and authority to (and also delegates to managers and supervisors the power to) fire and hire, determine rate and method of pay, determine work schedules, and otherwise affect the quality of employment of employees of Nino's Beach, including Plaintiff, FLSA Collective Plaintiffs, and Class Members. Individual Defendant EFTHIMIOS PAPANASTASOPOULOS a/k/a TIM PAPPAS exercised functional control over the business and financial operations of Defendants' Nino's Beach. Individual Defendant EFTHIMIOS PAPANASTASOPOULOS a/k/a TIM PAPPAS ensured that the business is operating efficiently and profitably.

24.     At all relevant times, each Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, the NYLL, and the regulations thereunder.

25.     At all relevant times, each Defendant was an "employer" and "person" within the meaning of Section 15(a) of the FLSA and Section 215 of the NYLL.

26.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class Members was directly essential to the business operated by Defendant.

## FLSA COLLECTIVE ACTION ALLEGATIONS

27.     Plaintiff  brings claims for relief as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of all non-exempt "front-of-house" employees (including but not limited to servers, bussers, food runners, bartenders, barbacks, among others) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

28.     At all relevant times, Plaintiff and other FLSA Collective Plaintiffs were tipped employees who have been similarly situated, have had substantially similar job requirements and pay provisions, and have been and continue to be subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all of which have culminated in a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs (i) their proper wages, including overtime, due to invalid tip credits, (ii) illegally retained gratuities, (iii) misappropriated tips due to invalid tip pool distribution, and (iv) invalid meal credit deductions. Defendants were not entitled to take any tip credits under the FLSA, or to compensate Plaintiff and FLSA Collective Plaintiffs at a sub-minimum wage hourly rate, because they failed to satisfy all statutory requirements for taking a tip credit.

29.     The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

30.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## CLASS ACTION ALLEGATIONS

31.     Plaintiff brings claims for relief pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt "front-of-house" employees (including but not limited to servers, bussers, food runners, bartenders, barbacks, among others) employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein (the "Class Members" or the "Class").

32.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and the rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

33.     The proposed Class is so numerous that a joinder of all Class Members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendant. There is no doubt that there are more than forty (40) members of the Class.

34.    Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices Defendants, as alleged herein, of (1) failure to pay the proper minimum wage and overtime because Defendants were not entitled to claim any tip credit because they failed to meet the statutory requirements under the New York Labor Law, (2) misappropriated tips earned by Plaintiff and the Class, (3) failure to pay proper wages in tips due to an invalid tip pool, (4) improper meal credit deductions, (5) failure to pay spread of hours premiums for workdays with a spread of ten or more hours, (6) failure to provide proper wage statements, and (7) failure to provide proper wage and hour notices. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

35.    Plaintiff and the Class suffered from Defendants' failure to pay minimum wage and their proper overtime due to Defendants' invalid tip credit allowance because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for continuous periods of time which exceeded 30 minutes; (iv) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period, (v) included managers and non-tipped employees in the tip pool, (vi) and failed to accurately keep track of daily tips earned and maintain records.

36.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

37.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual Class Members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

38.     Defendants and other employers throughout the United States violate state labor laws. Current employees are often afraid to assert their rights out of fear of direct or indirect

retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

39.     These are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a.  Whether Defendants employed Plaintiff and the Class Members within the meaning of New York law;

b.  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants, regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c.  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

d.  Whether Defendants properly notified Plaintiff and Class Members of their hourly rates and overtime rates;

e.  Whether Defendants paid Plaintiff and Class Members the proper wage for all hours worked;

f.  Whether Defendants properly provided notice to Plaintiff and Class Members that Defendants were taking a tip credit;

g.  Whether Defendants illegally retained portions of tips earned by Plaintiff and Class Members;

h.  Whether Defendants mandated an unlawful tip-pooling scheme whereby Plaintiff and the Class Members were required to share tips earned with managers and other non-tipped employees;

i.  Whether Defendants accurately tracked the amount of tips earned by Plaintiff and Class Members each day and maintained records thereof;

j.  Whether Defendants required Plaintiff and Class Members to engage in non-tipped duties exceeding 20% of each workweek;

k.  Whether Defendants required Plaintiff and Class Members to engage in non-tipped duties for continuous periods of time exceeding 30 minutes;

l.  Whether Defendants took the proper amount of tip credit allowance from Plaintiff and Class Members for each payment period under the New York Labor Law;

m. Whether Defendants provided proper wage statements informing (i) Plaintiff and Class Members of the amount of tip credit taken for each payment period, and (ii) all non-exempt employees of information required to be provided on wage statements under the New York Labor Law;

n. Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to Plaintiff and Class Members, per requirements of the New York Labor Law; and

o. Whether Defendants improperly deducted meal credits from Plaintiff and Class Members.

## STATEMENT OF FACTS

*Wage and Hour Claims:*

40. In or about April 2022, Plaintiff AKLEEMA KHAN was hired by Defendants to work as a bartender and server for Defendants' "Nino's Beach" Restaurant, located at 43 Orchard Beach Blvd, Port Washington, NY 11050. Plaintiff worked for Defendants until in or around March 2023.

41. Throughout her employment, Plaintiff additionally worked shifts at Defendants' Nino's AQ, as needed. FLSA Collective Plaintiffs and Class Members similarly interchanged between Defendants' Restaurants as needed.

42. Throughout her employment, Plaintiff was compensated by Defendants at the tipped credit minimum wage. FLSA Collective Plaintiffs and Class Members were paid at similar hourly rates.

43. With respect to Plaintiff, FLSA Collective Plaintiffs, and Class Members, Defendants were not entitled to claim any tip credit allowances under the FLSA or the NYLL because Defendants: (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) claimed tip credits for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding twenty percent of the total hours worked each workweek; (iii) implemented an invalid tip pooling scheme in which managers and non-tipped employees

were included in the tip pool; and (iv) failed to accurately keep track of daily tips earned and maintain records thereof.

44.    From the start of her employment until in or around June 2022, Plaintiff was scheduled by Defendants to work five (5) days per week, from 3:00 p.m. to 12:00 a.m. for nine (9) hours per day, for a total of forty-five (45) hours per week.

45.    From in or around June 2022 until in or around September 2022, Plaintiff was scheduled by Defendants to work six (6) days per week, from 3:00 p.m. to 12:00 a.m. for nine (9) hours per day on five (5) days and from 10:00 a.m. to 8:00 p.m. for ten (10) hours per day on the sixth day, for a total of fifty-five (55) hours per week.

46.    From in or around September 2022 until the end of her employment, Plaintiff was scheduled by Defendants to work three (3) days per week, from 3:00 p.m. to 12:00 a.m. for nine (9) hours per day, for a total of twenty-seven (27) hours per week.

47.    Although Plaintiff and other tipped employees were required to arrive at 3:00 p.m. to work, service would not begin until 6:00 p.m. During such time, tipped employees would be required to engage in side-work, including cleaning stations, sweeping/mopping the floor, cleaning bathrooms, and polishing silverware. Further, service typically ended between 10:00 p.m. and 11:30 p.m., and Plaintiff and other tipped employees would be required by Defendants to spend approximately two (2) hours performing additional non-tipped closing duties.

48.    In addition to the above schedules, Plaintiff was regularly required by Defendants to stay past her shift, for an additional two (2) to three (3) hours. Because Plaintiff was always already scheduled to work nine (9) hour days, this additional work caused Plaintiff to regularly work ten (10) to twelve (12) hour days.

49.    Although Plaintiff regularly worked days with a spread of ten or more hours, Defendants always failed to compensate spread of hours premiums to Plaintiff for such days.

Defendants similarly failed to pay spread of hours premiums to Class Members for their workdays with a spread of ten or more hours.

50.     Throughout Plaintiff's employment, Defendants directly retained a portion of tips, surcharges, and gratuities earned by Plaintiff, FLSA Collective Plaintiffs, and Class Members. Further, Defendants instituted an invalid tip pool that included managers and non-tipped employees, thereby improperly distributing tips to invalid tip pool members that were earned by Plaintiff, FLSA Collective Plaintiffs, and Class Members.

51.     Specifically, Defendants' tip pool improperly allocated points to managers, including Christhian Portillo and Individual Defendant STACEY FILLAS, and to other non-tipped employees. Defendants never notified Plaintiff, FLSA Collective Plaintiffs, and Class Members of their individual shares in the tip pool or tracked the amount of tips earned by them. Plaintiff, FLSA Collective Plaintiffs, and Class Members regularly asked Defendants about how the tipping system worked or how much tips they earned, and Defendants were never able to provide answers as they had no such actual system or records thereof.

52.     Further, Defendants regularly changed their tipping system as they pleased. One day Defendants would operate their business with a full-house pooling system whereby all employees' tips are pooled together and distributed by Defendants, then another day they may switch to an individual tipping system whereby servers and bartenders kept their personal tips and tipped out the tipped support staff themselves. When Defendants utilized the full-house pooling system, in furtherance of their invalid inclusion of non-tipped employees, the pools' point count and allocations of the points would always change and never made sense to Plaintiff or other employees. In addition, there have been instances where Defendants delegated the tip pool distribution duty to servers, who did not know how to properly distribute the tips since they were

never notified of how the tip pool is supposed to work, and would therefore improperly distribute the tips.

53.    Due to Defendants' (i) erratically ever-changing tip pooling system, (ii) lack of tip tracking, (iii) inclusion of invalid tip pool members, (iv) improper delegation of tip pool distribution responsibilities to employees unfit for such roles, and (v) direct tip retention, Plaintiff FLSA Collective Plaintiffs, and Class Members, at all times, failed to (i) anticipate which tip system would be used for the day, (ii) have reliable knowledge of their tips earned, (iii) earn their proper tip distributions, and (iv) keep all tips rightfully earned by them.

54.    At all times, Defendants' above tip retention schemes also applied to tips, gratuities, and surcharges earned by Plaintiff, FLSA Collective Plaintiffs, and Class Members from large parties or private events hosted at Defendants' Restaurants.

55.    Furthermore, Plaintiff was required to engage in non-tipped related activities for (i) more than twenty percent (20%) of her working time, and (ii) for continuous periods of time exceeding thirty (30) minutes. Such non-tipped activities include cutting and preparing fruits and garnishes; cleaning fridges; stocking liquor; folding silverware roll-ups; cleaning; sweeping; and washing and polishing glassware. Even though Defendants required Plaintiff to engage in non-tipped activities both (i) in excess of two hours or twenty percent of the total hours worked each shift, and (ii) for continuous periods of time exceeding 30 minutes, Defendants improperly claimed a tip credit for all hours worked by Plaintiff.

56.    Plaintiff observed that other tipped employees (including bussers, servers, runners, bartenders, barbacks) were also required to engage in non-tipped related activities for (i) more than twenty percent (20%) of their working time, and (ii) continuous periods of time exceeding 30 minutes. Even though Defendants required tipped employees to engage in non-tipped activities for (i) hours exceeding twenty percent (20%) of the total hours worked each workweek, and (ii) for

continuous periods of time exceeding 30 minutes, Defendants improperly claimed tip credit for <u>all</u> hours worked by tipped employees. Therefore, at all times, FLSA Collective Plaintiffs and Class Members were improperly paid for all hours worked, due to invalid tip credits.

57.    Throughout her employment, Defendants improperly deducted a meal credit from Plaintiff's wages under FLSA 29 U.S.C. § 203(m) and 12 N.Y.C.R.R. § 146-1.9, without regard to whether the meal credit deducted exceed the meals "reasonable cost"[1], whether the meals provided satisfied New York State's nutritional requirements containing all four food groups[2], whether employees actually consumed the credited meals or not, and whether employees consumed the credited meals during a reasonable meal period or not. Defendants' meal credit deductions were improper because (1) they did not provide a proper meal which includes at least one of the types of food from all four of the following groups: (i) fruits or vegetables; (ii) grains or potatoes; (iii) eggs, meat, fish, poultry, dairy, or legumes; and (iv) tea, coffee, milk, or juice; and (2) the meals were never offered to Plaintiff during a reasonable meal period as Plaintiff was never provided a proper meal break. As a result, Defendants claimed improper meal credits from Plaintiff every day. FLSA Collective Plaintiffs and Class Members were also improperly deducted for meal credits every day.

58.    Plaintiff and Class members never received a wage notice from Defendants. They also did not receive accurate wage statements from Defendants.

59.    In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class members at the beginning of their employment with Defendants.

---

[1] 29 C.F.R. § 531.3
[2] 12 NYCRR § 146-3.7

60.    Defendants further violated the WTPA by failing to provide Plaintiff and Class members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA. *See Shi Yong Li v. 6688 Corp.,* 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time actually worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour actually 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours actually worked") (emphasis added).

61.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

62.     Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

63.     Had the wage statements Defendants provided to Plaintiff and Class Members accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiff and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

64.     The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

65.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

66.     The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct

effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); T.F. v. N.F., 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[3]

67.     The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

68.     "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL

---

[3] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains:  "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, *18 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, *4 (S.D.N.Y. July 14, 2022)).

69.    Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendant's automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

70.    Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

71.    The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

72.    Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

73.    The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Id.*

74.     Here, the problem is not merely challenging but insurmountable. Plaintiff and Class members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class Members. The problem, rather, is that Plaintiff and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

75.     Defendants knowingly and willfully operated their business with a policy of deducting invalid tip credits from the wages of Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and the NYLL.

76.     Defendants knowingly and willfully operated their business with a policy of illegally retaining gratuities from Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and the NYLL.

77.     Defendants knowingly and willfully operated their business with a policy of misappropriating tips earned by Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and the NYLL.

78.     Defendants knowingly and willfully operated their business with a policy of deducting invalid meal credits from the wages of Plaintiff, FLSA Collective Plaintiffs, and Class Members, in violation of the FLSA and the NYLL.

79.     Defendants knowingly and willfully operated their business with a policy of failing to pay spread of hours premiums to Plaintiff and Class Members for days worked with a spread of ten or more hours, in violation of the NYLL.

*Sexual and Racial Discrimination and Retaliation Claims:*

80.    Plaintiff is a Muslim woman.

81.    Throughout her employment, Plaintiff was in a relationship with her co-worker, Luis [LNU].

82.    Throughout Plaintiff's employment, Plaintiff was subjected to sexual and racial discrimination on a daily basis by Defendants, and was ultimately retaliated against and terminated for her complaints of such discrimination.

83.    Throughout Plaintiff's employment, Plaintiff was subjected to a hostile work environment, sexually harassed and racially discriminated against by eight (8) people with leadership roles at Defendants' Nino's Beach Restaurant, including:

    i.    Owner, Executive Chef, and Individual Defendant FRANCO VENDOME;

    ii.    Owner and Individual Defendant MICHAEL VENDOME;

    iii.    Operations Manager and Individual Defendant EFTHIMIOS PAPANASTASOPOULOS a/k/a TIM PAPPAS;

    iv.    Defendants' Manager Fotios Drosos;

    v.    Defendants' Manager Gianni Torto;

    vi.    Defendants' Manager Christhian Portillo;

    vii.    Defendants' Chef de Cuisine Ken Corrow; and

    viii.    Defendants' Sous Chef Lalo [LNU]

(collectively, the "Discriminators").

84.    Individual Defendant FRANCO VENDOME regularly discriminated against Plaintiff on the basis of her sex. Every time Individual Defendant FRANCO VENDOME saw Plaintiff holding, or even just be near, a cucumber or sausage, he would say "You should see my cucumber!" or "I wish you would hold my sausage like that!", in blatant references to his genitalia.

One time, he saw Plaintiff and another female employee merely standing near sausage and shrimp and said to them "You (Plaintiff) deserve a sausage and you (the other female employee) only deserve a shrimp!" (Implying Plaintiff "deserves" a larger penis [sausage] than the other female employee who only deserves a smaller one [shrimp]).

85.     Individual Defendant MICHAEL VENDOME regularly discriminated against Plaintiff on the basis of her sex. Individual Defendant MICHAEL VENDOME regularly made various inappropriate sexual comments and jokes to Plaintiff.

86.     Individual Defendant EFTHIMIOS PAPANASTASOPOULOS a/k/a TIM PAPPAS regularly discriminated against Plaintiff on the basis of her sex and religion. Individual Defendant EFTHIMIOS PAPANASTASOPOULOS a/k/a TIM PAPPAS regularly touched, grabbed, or yanked Plaintiff. Individual Defendant EFTHIMIOS PAPANASTASOPOULOS a/k/a TIM PAPPAS would regularly tell inappropriate sexual stories or make inappropriate sexual jokes and comments to Plaintiff, in attempts to flirt with Plaintiff. Individual Defendant EFTHIMIOS PAPANASTASOPOULOS a/k/a TIM PAPPAS would often, and always unwarrantedly, tell Plaintiff stories, jokes, and comments about: his sexual experiences, the amounts of women he had sex with, how he has such "amazing abs", how he "never uses condoms during sex", how "great" he "looks for a 50-year old man", and how "well" he "would be able to please" Plaintiff. Often times when Individual Defendant EFTHIMIOS PAPANASTASOPOULOS a/k/a TIM PAPPAS said such things to Plaintiff, he would get so close to Plaintiff that his face would less than be two inches away from Plaintiff's face. Individual Defendant EFTHIMIOS PAPANASTASOPOULOS a/k/a TIM PAPPAS additionally regularly made various inappropriate comments and jokes about Plaintiff's religion.

87.     Defendants' manager Fotios Drosos regularly discriminated against Plaintiff on the basis of her sex. Defendants' manager Fotios Drosos regularly went behind Plaintiff and pressed

his genitalia against Plaintiff's buttocks, sometimes in front of other employees. Defendants' manager Fotios Drosos regularly made inappropriate sexual comments and jokes to Plaintiff. Defendants' manager Fotios Drosos often compared Plaintiff's breasts to the breasts of other female employees. One time, Defendants' manager Fotios Drosos told Plaintiff and another female employee, Samantha [LNU], in reference to their breasts, "Samantha you don't have much there, but Akleema (Plaintiff) you sure have been blessed with a lot." One time, Plaintiff observed Defendants' manager Fotios Drosos inappropriately flirting with a female employee, Jessica [LNU], who was under the age of 18 and still in high school, telling her that he wanted to help her try on dresses for her prom night, and that he wanted to be her prom date. Fotios Drosos is currently 38 years old.

88.    Defendants' manager Gianni Torto regularly discriminated against Plaintiff on the basis of her sex. Plaintiff observed Defendants' manager Gianni Torto regularly drink liquor throughout the day while working, and he was therefore inebriated at work often. Defendants' manager Gianni Torto regularly made inappropriate sexual comments and jokes about Plaintiff and her boyfriend/co-worker Luis [LNU]. Defendants' manager Gianni Torto would regularly ask them about their sexual experiences together, with the intent of trying to find out Plaintiff's sexual tendencies and preferences. Specifically, he would ask them questions including: "What does she (Plaintiff) like?", "What's her (Plaintiff's) favorite position?" or "What do you (Plaintiff's boyfriend) do to her?", among others. If Plaintiff and her boyfriend did not provide enough, or any, details of Plaintiff's sexual experiences and preferences to him, Defendants' manager Gianni Torto would get angry with them and threaten them.

89.    Defendants' manager Christhian Portillo regularly discriminated against Plaintiff on the basis of her sex. Defendants' manager Christhian Portillo regularly made various inappropriate sexual comments and jokes to Plaintiff. For example, every time Christian Portillo

saw Plaintiff speaking to a co-worker named Dani [LNU], and heard Plaintiff call him by his name, Christhian Portillo would say "Did you call him daddy?", "I bet you love calling someone daddy!" or "I don't like seeing you call someone else daddy!" Additionally, he would regularly make inappropriate sexual comments about female customers to Plaintiff, such as "Damn, I would love to fuck her!" or "Damn, her ass is so perfect!"

90.    Defendants' Chef de Cuisine Ken Corrow regularly discriminated against Plaintiff on the basis of her sex and religion. Defendants' Chef de Cuisine Ken Corrow regularly made various inappropriate sexual comments and jokes to Plaintiff. As a Muslim, Plaintiff cannot eat pork, and Defendants' Chef de Cuisine Ken Corrow regularly made pork for the family meal. When Defendants' Chef de Cuisine Ken Corrow made pork, Plaintiff would inform him that she can't eat pork, and he would always respond "Sure you can, you put your boyfriends pork (in reference to Plaintiff's boyfriend's penis) in your mouth every night!" As a result of Defendants' Chef de Cuisine Ken Corrow's discrimination, Plaintiff was (i) unable to eat certain meals, (ii) had her accommodation requests denied, (iii) sexually discriminated, and (iv) religiously discriminated, all at once, by Defendants' Chef de Cuisine Ken Corrow.

91.    Defendants' Sous Chef Lalo [LNU] regularly discriminated against Plaintiff on the basis of her sex. Defendants' Sous Chef Lalo [LNU] regularly made various inappropriate sexual comments and jokes to Plaintiff. Defendants' Sous Chef Lalo [LNU] often made meatballs for family meal, and whenever he saw Plaintiff taking or eating meatballs, he would say "I bet you love my balls, don't you?", "I hope they're as good as your boyfriends' balls", or "Take two so you can eat them like Luis's balls", among other inappropriate meatball-related sexual innuendos.

92.    The Discriminators collectively subjected Plaintiff to a hostile work environment through their sexual harassment and/or religious discrimination.

93.     Plaintiff regularly complained to Defendants about the sexual and religious discrimination she faced from each Discriminator, but nothing was ever done about it. Every time she complained about to one of the Individual Defendants about discriminatory conduct from one of the Discriminators, they laughed at her and brushed her complaints off, every time. There was nothing Plaintiff could do to stop this discrimination, especially since two of the Discriminators were Owners and one was the Operations Manager.

94.     Although Plaintiff's complaints to Defendants about her discrimination were always ignored, Plaintiff never stopped complaining about the discrimination. Eventually Plaintiff's unrelenting complaining about Defendants' discriminatory conduct and hostile work environment irritated Defendants to the point they retaliated against her and terminated her for such complaints.

95.     As a result of Defendants' discrimination and retaliation, Plaintiff suffered from lost wages, anxiety, and past and future emotional distress.

96.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff and Class Members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

97.     Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

98.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

99.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

100.    At all relevant times, Defendants had gross annual revenues in excess of $500,000.

101.    At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs their proper wages, including overtime, due to an invalid tip credit.

102.    At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs all tips owed due to an invalid tip pooling policy.

103.    At all relevant times, Defendants had a policy and practice of unlawfully retaining the tips, gratuities and surcharges of Plaintiff and FLSA Collective Plaintiffs.

104.    At all relevant times, Defendants showed a willful disregard for the provisions of the FLSA by instituting a tip pooling scheme where Plaintiff and FLSA Collective Plaintiffs were subject to a tip pool they did not agree to, which was set by and enforced by Defendants. Defendants failed to maintain tip sheets and failed to inform Plaintiff and FLSA Collective Plaintiffs of their respective tip pool contributions. Further, Defendants' tip pool improperly included non-tipped employees such as managers. As a result, Defendants illegally misappropriated their tips through the tip pooling arrangement. Such improper tip pooling policy also invalidates Defendants' tip credit allowance.

105.    At all relevant times, Defendants had a policy and practice of improperly deducting meal credits from Plaintiff and FLSA Collective Plaintiffs.

106.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

107.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

108.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages due to an invalid tip credit, and damages representing disgorgement of illegally retained tips, plus an equal amount as liquidated damages.

109.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

110.    Plaintiff and FLSA Collective Plaintiffs are entitled to an award of his reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW</u>

111.    Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

112.    At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the New York Labor Law §§ 2 and 651.

113.    Defendants willfully violated Plaintiff's and Class Members' rights by improperly deducting meal credits from Plaintiff and Class Members regardless of whether the meal credit deducted exceed the meals' "reasonable cost", whether the meals provided satisfied New York State's nutritional requirements containing all four (4) food groups, whether Plaintiff and Class Members consumed the meals in question, and whether Plaintiff and Class Members consumed the meals in question during a reasonable meal period.

114.   Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them proper wages in the lawful amount for hours worked because Defendants were not entitled to claim any tip credits.

115.   Defendants knowingly and willfully violated Plaintiff's and Class Members' rights by instituting an illegal tip pooling scheme in which the tip pool included non-tipped employees such as managers. In doing so, Defendants willfully deprived Plaintiff and Class Members of their lawfully earned wages.

116.   Defendants knowingly and willfully directly retained tips, gratuities and surcharges from Plaintiff and Class Members.

117.   Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the NYLL.  Defendants are required to provide itemized listings of deductions taken on each wage statement. Defendants failed to satisfy the requirements under the NYLL because such tip credit allowance was never clearly included in wage statements to tipped employees for each payment period. Defendants also provided fraudulent wage statements that failed to accurately reflect the proper compensation, including tips illegally withheld from Plaintiff and Class Members.

118.   Defendants knowingly and willfully failed to compensate spread of hours premiums to Plaintiff and Class Members for workdays with a spread of ten or more hours.

119.   Defendants knowingly and willfully failed to provide proper wage and hour notices to Plaintiff, as required by New York Labor Law § 195(1).

120.   Defendants knowingly and willfully failed to provide proper wage statements to Plaintiff with every wage payment, as required by New York Labor Law § 195(3).

121.   Defendants knew of and/or showed a willful disregard for the provisions of the NYLL as evidenced by their failure to pay Plaintiff and Class Members all of the wages they were

due (including overtime wages) when Defendants knew or should have known such was due, and their failure to provide Plaintiff and other Class Members with accurate wage statements.

122.    Due to Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants their damages for unpaid wages due to an invalid tip credit, unpaid tip compensation due to an invalid tip pooling policy, damages representing disgorgement of illegally retained tips, statutory penalties, liquidated damages, and reasonable attorneys' fees and costs, pursuant to New York Labor Law.

## COUNT III

### DISCRIMINATION UNDER THE
### NEW YORK STATE HUMAN RIGHTS LAW

**(N.Y. Exec. Law § 292, *et seq*.)**
**(brought on Plaintiff's behalf only)**

123.    Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

124.    The New York State Executive Law § 296(1)(a) provides that:

"It shall be an unlawful discriminatory practice: For an employer … because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

125.    Defendants violated the New York State Human Rights Law when they discriminated against Plaintiff on the basis of her sex and religion. Individual Defendants FRANCO VENDOME,  MICHAEL VENDOME, and EFTHIMIOS PAPANASTASOPOULOS a/k/a TIM PAPPAS, and 5 other of Plaintiff's managers, all regularly subjected Plaintiff to sexual harassment and/or religious discrimination. Plaintiff regularly complained of such discrimination and harassment to each of the Individual Defendants, who always just laughed at her, ignored her complaints, and took no action upon such complaints.

126.    This discriminatory conduct was in willful disregard of the provisions of the NYSHRL.

127.    As a direct and proximate result of Defendants' willful disregard of the NYSHRL, Plaintiff suffered damages in the form of lost past and future emotional distress. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

**COUNT IV**

**DISCRIMINATION UNDER THE
NEW YORK CITY HUMAN RIGHTS LAW**

**(N.Y.C. Admin. Code § 8-101, *et seq.*)
(brought on Plaintiff's behalf only)**

128.    Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

129.    The New York City Administrative Code §8-107(1) provides that:

"It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

130.    Defendants violated the New York City Human Rights Law when they discriminated against Plaintiff on the basis of her sex and religion.

131.    Individual Defendants FRANCO VENDOME, MICHAEL VENDOME, and EFTHIMIOS PAPANASTASOPOULOS a/k/a TIM PAPPAS, and 5 other of Plaintiff's managers, all regularly subjected Plaintiff to sexual harassment and/or religious discrimination. Plaintiff

regularly complained of such discrimination and harassment to each of the Individual Defendants, who always just laughed at her, ignored her complaints, and took no action upon such complaints.

132.    This discriminatory conduct was in willful disregard of the provisions of the NYCHRL.

133.    As a direct and proximate result of Defendants' willful disregard of the NYCHRL, Plaintiff suffered damages in the form of past and future emotional distress. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

## COUNT V

## RETALIATION UNDER THE
## NEW YORK STATE HUMAN RIGHTS LAW

**(N.Y. Exec. Law § 292, *et seq.*)**
**(brought on Plaintiff's behalf only)**

134.    Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

135.    New York State Executive Law § 296(7) provides that:

"It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate. . . against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."

136.    As alleged herein, Plaintiff was retaliated against by Defendants by being terminated due to being the victim of and complaining about discrimination against her on the basis of her sex and religion.

137.    This retaliatory conduct was in willful disregard of the provisions of the NYSHRL.

138.    As a direct and proximate result of Defendants' willful disregard of the NYSHRL, Plaintiff suffered damages in the form of past and future emotional distress. Plaintiff seeks all

applicable remedies under the law, including compensatory damages, punitive damages, back pay, front pay, and attorneys' fees and costs.

## COUNT VI

## RETALIATION UNDER THE
## NEW YORK CITY HUMAN RIGHTS LAW

**(N.Y.C. Admin. Code § 8-101, *et seq.*)**
**(brought on Plaintiff's behalf only)**

139. Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

140. The New York City Administrative Code §8-107(1) provides that:

"It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter,. . . (v) requested a reasonable accommodation under this chapter. . ."

141. As alleged herein, Plaintiff was retaliated against by Defendants by being terminated due to being the victim of and complaining about discrimination against her on the basis of her sex and religion.

142. This retaliatory conduct was in willful disregard of the provisions of the NYCHRL.

143. As a direct and proximate result of Defendants' willful disregard of the NYSHRL, Plaintiff suffered damages in the form of past and future emotional distress. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, back pay, front pay, and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court assume jurisdiction herein and thereafter grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NYLL, the NYSHRL, and the NYCHRL;

b.  An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid minimum wages due to an invalid tip credit, due under the FLSA and the NYLL;

d.  An award equal to the amount of the improperly retained tips, gratuities, and surcharges withheld by Defendants, due under the FLSA and the NYLL;

e.  An award equal to the amount of tips Defendants misappropriated through their invalid tip pool, due under the FLSA and the NYLL;

f.  An award of unpaid wages due to Defendants' improper meal credit deductions, due under the FLSA and the NYLL;

g.  An award of unpaid spread of hours premiums, due under the NYLL;

h.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

i.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

j.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages due to an invalid tip credit, proper tips due to an invalid tip pooling policy, illegal retention of gratuities, and invalid meal credit deductions, pursuant to the FLSA and the NYLL;

k.  An award of statutory penalties as a result of Defendants' failure to comply with the NYLL wage notice and wage statement requirements;

l.  An award of prejudgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees;

m.  Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

n.  Designation of this action as a class action pursuant to F.R.C.P. 23;

o.  Designation of Plaintiff as Representative of the Class; and

p.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.


Dated: February 12, 2024                                    Respectfully submitted,

                                                  By:   */s/ C.K. Lee*
                                                        C.K. Lee

                                                        **LEE LITIGATION GROUP, PLLC**
                                                        C.K. Lee, Esq. (CL 4086)
                                                        Anne Seelig, Esq. (AS 3976)
                                                        148 West 24th Street, 8th Floor
                                                        New York, NY 10011
                                                        Tel.: (212) 465-1188
                                                        Fax: (212) 465-1181
                                                        *Attorneys for Plaintiff,*
                                                        *FLSA Collective Plaintiffs,*
                                                        *and the Class*